UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JUAN CARLOS CRUZ GUTIERREZ, | § | |
| A # 221-439-384 | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:25-4695 |
| | § | |
| WARDEN RAYMOND THOMPSON, *et al.* | § | |
| | § | |
| Respondents. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Juan Carlos Cruz Gutierrez is in the custody of officials with the Immigration and Customs Enforcement (ICE), a division of the United States Department of Homeland Security (DHS), at the Joe Corley Processing Center in Conroe, Texas. Through counsel, Cruz Gutierrez filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Dkt. 1) seeking his immediate release on bond. The federal respondents, officials with DHS and ICE, filed a motion for summary judgment (Dkt. 12) seeking denial of the petition. Cruz Gutierrez filed a response (Dkt. 14), and the federal respondents replied (Dkt. 15). Having reviewed the petition, the briefing and exhibits, the applicable law, and all matters of record, the Court concludes that the respondents' motion for summary judgment should be **denied** and that habeas relief should be **granted**. The Court's reasons are explained below.

## I.      BACKGROUND

The parties agree on the relevant facts. Cruz Gutierrez is a citizen of Mexico. He

entered the United States without inspection in or around 2000.  On August 13, 2025, when

ICE officials encountered him during immigration enforcement actions, he admitted to the

officials that he does not have immigration documents permitting him to be or remain

legally in the United States.  Officials placed him in removal proceedings.  *See* Dkt. 12-1

(sworn declaration of Deportation Officer Arturo Estrada); Dkt. 1, at 41-45 (Exhibit 8,

Form I-213, Record of Deportable/Inadmissible Alien).

On September 4, 2025, an Immigration Judge (IJ) granted Cruz Gutierrez's

application for release on bond (*id*. at 9-11 (Exhibit 1, bond order); *id*. at 12-19 (Exhibit 2,

memorandum opinion); *id*. at 46-98 (Exhibit 9, bond application packet with supporting

documents)).   Addressing  the  statutory  issue  relevant  to  this  habeas  action,  the  IJ

determined that Cruz Gutierrez was not "seeking admission" when apprehended and

therefore is detained under 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)(2), and is eligible

for release on bond:

> [Cruz Gutierrez] has been present in the United States for over 20 years.
> Clearly, [he] has already entered the United States and is no longer "seeking
> admission" for the purpose of INA § 235(b)(2) [codified at 8 U.S.C. §
> 1225(b)(2)]. Therefore, [he] is detained pursuant to INA § 236(a) [codified
> at 8 U.S.C. § 1226(a)].

(*id*. at 17).  The IJ then made specific findings regarding the petitioner's lack of danger to

the community and low flight risk:

> [Cruz Gutierrez] is not a danger to the community.  The record contains
> letters of support attesting to his character. [He] does not have a criminal
> history indicating that he is a danger. Moreover, the Court finds that [Cruz
> Gutierrez] will not abscond and that there is a bond sufficient to mitigate any
> risk of flight. The Court considered his adverse immigration history which
> includes his unlawful entry into the United States and employment without
> authorization. According to the I-213, there is also a prior history of

voluntary returns before his last entry. However, [Cruz Gutierrez] last entered the United States over 20 years ago and has substantial ties to the community. His family ties include U.S. citizen children. [He] is also a business owner and has property ties to the community. [He] presented proof of a fixed address and has a viable sponsor. [He] is also eligible to apply for cancellation of removal, so relief is potentially available.

(*id*. at 17-18). The IJ granted the petitioner's request for custody redetermination and set a bond of $5,000 (*id*. at 18).

The next day, September 5, 2025, the Board of Immigration Appeals (BIA) issued a precedential decision in *Matter of Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025), holding that non-citizens who are present in the United States and have not been admitted after inspection are subject to detention under 8 U.S.C. § 1225(b)(2), not 8 U.S.C. § 1226(a), and thus are not entitled to a bond hearing.

On September 8, 2025, DHS filed an appeal with the BIA from the bond order, arguing that Cruz Gutierrez is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) (Dkt. 12-1, at 2). Officials also invoked the automatic stay provision under 8 C.F.R. § 1003.19(i)(2), which stayed the IJ's order to release Cruz Gutierrez on bond. *See* Dkt. 1, at 23-24 (Exhibit 4, EOIR-43)). The respondents state that, because *Hurtado* is controlling authority for the BIA, it is "overwhelmingly likely" that the BIA will vacate the IJ's bond order (Dkt. 12, at 7).

Although the petitioner's sponsor has attempted multiple times to post the $5,000 bond ordered by the IJ, both in person and online, ICE has refused the payment (Dkt. 1 at 20-22 (Exhibit 3, declaration of sponsor); *id*. at 25-26 (Exhibit 5, screenshots reflecting ICE's refusal of bond payment)).

The petitioner claims that (1) his detention violates his due-process rights under the Fifth Amendment and (2) the automatic stay regulation, 8 C.F.R. § 1003.19(i)(2) exceeds the authority delegated to DHS by Congress (Dkt. 1, at 6-7).  He requests that the Court order his immediate release in accordance with the IJ's bond order, among other relief.

## II.     LEGAL STANDARDS

The respondent seeks summary judgment.  Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013).  Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact.  *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."  *Id*. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."  *Id*.  The nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case."  *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (cleaned up).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party."  *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (cleaned up).  A plaintiff's statements may be sufficient to demonstrate a genuine issue of material fact.  *See Bourne v. Gunnels*, 921 F.3d 484, 492-

93 (5th Cir. 2019).  However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."  *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (cleaned up); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  Rather, "[s]elf-serving affidavits and declarations, like all summary judgment evidence, must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021) (cleaned up) (citing FED. R. CIV. P. 56(c)(4)).

## III.    ANALYSIS

The respondents argue that summary judgment is warranted in their favor because (1) the petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and (2) the automatic stay regulation, 8 C.F.R. § 1003.19(i)(2), is lawful.  The parties agree that there is no genuine issue of material fact and that this case presents a purely legal issue for resolution.

### A.    Statutory Basis for Detention

Cruz Gutierrez's habeas claim rests on the premise that he is detained under 8 U.S.C. § 1226(a) and thus eligible for a bond hearing.  The respondents argue that he is detained under 8 U.S.C. § 1225(b)(2) and ineligible for bond.  In one recent case from this judicial district, the court explained the application of the two provisions:

> Two statutes principally govern the detention of noncitizens pending removal proceedings: 8 U.S.C. §§ 1225 and 1226. Under 8 U.S.C. § 1225(b)(2), otherwise referred to as the "mandatory detention statute," a noncitizen who

is an applicant for admission shall be detained for a removal proceeding if the examining officer determines that the noncitizen seeking admission is not clearly and beyond a doubt entitled to be admitted.  In contrast, under 8 U.S.C. § 1226, the "discretionary detention statute," a noncitizen subject to detention is entitled to procedural protections that are not afforded under the mandatory detention statute, such as the right to a bond re-determination hearing in front of an Immigration Judge and a right to appeal any custody determination.

*Buenrostro-Mendez v. Bondi*, No. H-25-3726, 2025 WL 2886346, at *2 (S.D. Tex. Oct. 7, 2025) (cleaned up).  Until several months ago, "[t]he Department of Homeland Security's longstanding interpretation had been that § 1226, not § 1225, applies to noncitizens . . . who are already present in the country." *Id.*; *see Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (stating that § 1225(b)(2) applies to "aliens seeking admission into the country" and that § 1226(a) applies to those "already in the country pending the outcome of removal proceedings").  However, on July 8, 2025, the respondents issued an internal memorandum that reinterpreted the statutes and instructed ICE personnel to apply § 1225(b)(2)'s mandatory detention provision to noncitizens already in the United States.[1]  Shortly after, on September 5, 2025, the BIA issued the *Hurtado* opinion agreeing with ICE's position and holding that those already present in the country now are subject to mandatory detention under § 1225(b)(2).

The respondents argue that the plain language of § 1225(b)(2) applies to Cruz Gutierrez and authorizes his mandatory detention (Dkt. 12, at 13 (citing the BIA's decision

---

[1]     The July 8, 2025, memorandum is not in the record in this case, but has been examined and cited by other courts.  *See*, *e.g.*, *Vazquez v. Feeley*, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082, at *5 & n. 2 (D. Nev. Sept. 17, 2025).

in *Hurtado*)).   Section 1225, according to its title, covers "Inspection by immigration

officers; expedited removal of inadmissible arriving aliens; [and] referral for hearing."  8

U.S.C. § 1225. Section 1225(b)(2) provides for mandatory detention of "an alien who is an

applicant for admission" in certain circumstances:

> . . . [I]n the case of an alien who is an applicant for admission, if the
> examining immigration officer determines that an alien seeking admission is
> not clearly and beyond a doubt entitled to be admitted, the alien shall be
> detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2).[2]  Section § 1225(b)(2) thus mandates detention when the noncitizen

is "an applicant for admission," when the person is "seeking admission," and when an

"examining immigration officer" determines that the person "is not clearly and beyond a

doubt entitled to be admitted."   In contrast, Section 1226's title states that it covers

"Apprehension and detention of aliens," 8 U.S.C. § 1226.  Section § 1226(a) provides that

"an alien may be arrested and detained pending a decision on whether the alien is to be

removed from the United States" and, with some exceptions, that the Attorney General

"may release the alien" on bond or conditional parole.  8 U.S.C. § 1226(a).

Cruz Gutierrez argues that the statutory language in § 1225(b)(2) does not apply to

him and that his case falls under 8 U.S.C. § 1226(a).  He contends that, because he entered

the United States without permission over 20 years before he was detained, and because he

was apprehended miles from the border, he is not a person "seeking admission" and thus

---

[2]      Section 1225(a)(1) defines an "applicant for admission" as an "alien present in the United
States who has not been admitted or who arrives in the United States."  The respondents maintain
that Cruz Gutierrez is an "applicant for admission" under § 1225(a)(1) and thus is necessarily
subject to § 1225(b)(2) (Dkt. 12, at 13).

is not covered by the plain language of § 1225(b)(2). He points out that the IJ already found

in his favor on this issue, holding squarely that he is not "seeking admission" and that §

1226(a) applies.[3]

The respondents maintain that the "seeking admission" phrase in § 1225(b)(2) does

not preclude the provision's application to Cruz Gutierrez because the terms "applicant for

admission" and "seeking admission" are "plainly synonymous" (Dkt. 12, at 14). The Court

disagrees. If the two phrases were actually synonymous, the phrase "seeking admission,"

although different from "applicant for admission" and appearing in the same sentence of

the statute, would be rendered superfluous. As explained by another court:

> If, as Respondents argue, § 1225(b)(2)(A) were intended to apply to all
> "applicant[s] for admission," there would be no need to include the phrase
> "seeking admission" in the statute. That is, rather than stating that mandatory
> detention is required for any "applicant for admission, if the examining
> immigration officer determines that an alien *seeking admission* is not clearly
> and beyond a doubt entitled to be admitted," § 1225(b)(2)(A) (emphasis
> added), the statute would instead provide for mandatory detention for any
> "applicant for admission, if the examining immigration officer determines
> that [the] alien ~~seeking admission~~ is not clearly and beyond a doubt entitled
> to be admitted."

*Lopez Benitez v. Francis*, No. 25-CIV-5937(DEH), 2025 WL 2371588, at *6 (S.D.N.Y.

Aug. 13, 2025) (emphasis and strike-through in original). The respondents' reading of the

provision would violate well-established principles requiring courts to give meaning to

each phrase in a statute. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("[i]t is a cardinal

---

[3]    *See* Dkt. 1, at 17 (IJ's memorandum opinion on bond states that Cruz Gutierrez "has been present in the United States for over 20 years," that he "[c]learly . . . has already entered the United States and is no longer 'seeking admission' for the purpose of [§ 1225(b)(2)]," and that he "is detained pursuant to [§ 1226(a)]").

principle of statutory construction that a statute ought, upon the whole, to be so construed

that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or

insignificant") (cleaned up);  *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599

U.S. 419, 432 (2023) ("every clause and word of a statute should have meaning") (cleaned

up); *Padron Covarrubias v. Vergara*, No. 5:25-CV-112, 2025 WL 2950097, at *4 (S.D.

Tex. Oct. 8, 2025) ("[w]hen two different phrases are used in a statute, a variation in terms

suggests a variation in meaning") (cleaned up) (citing A. Scalia & B. Garner, Reading Law:

The Interpretation of Legal Texts 170 (2012)).[4]  The respondents' argument that the two

different phrases in § 1225(b)(2) are synonymous therefore is not persuasive.[5]

---

[4]     The *Padron Covarrubias* court also relied on the grammar and tense of the phrase "seeking admission":

> [T]o fit within Section 1225(b)(2)(A), a noncitizen must be both an "applicant for admission" and one who is "seeking admission." . . . An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1). However, "seeking admission" is a present-tense, or current, ongoing action, and varies materially from the passive state of being an applicant. "Words are to be given the meaning that proper grammar and usage would assign them." A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 140 (2012).

*Id*.

[5]     Numerous courts have reached the same conclusion.  *See*, *e.g*., *Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *21 (W.D. Wash. Sept. 30, 2025) (citing and agreeing with reasoning in *Lopez Benitez*); *Cordero Pelico v. Kaiser*, No. 25-CV-07286-EMC, 2025 WL 2822876, at *8 (N.D. Cal. Oct. 3, 2025) (collecting cases concluding that "the text, structure, agency application, and legislative history of § 1225(b)(2)" support the conclusion that § 1225(b)(2) "applies only to noncitizens 'seeking admission,' a category that does not include noncitizens . . . living in the interior of the country"). *But see* Dkt. 15-1, at *7 (opinion denying temporary restraining order in *Garibay-Robledo v. Noem*, Civil Action No. 1:25-177-H (N.D. Tex), rejects the analysis in *Padron Covarrubbias* and other cases, stating "the Court is not persuaded by these arguments—at least at this preliminary stage of litigation").

The statutory structure further supports Cruz Gutierrez's position. As stated above, for decades the courts and DHS have interpreted § 1225(b)(2) to apply to noncitizens who seek admission upon arrival at ports of entry or near the border, and have interpreted § 1226(a) to apply to noncitizens already present in the United States. *See Jennings*, 583 U.S. at 289; *Buenrostro-Mendez*, 2025 WL 2886346, at \*2-\*3; *Zumba v. Bondi*, No. 25-CV-14626, 2025 WL 2753496, at \*9 (D.N.J. Sept. 26, 2025); *Vazquez*, 2025 WL 2676082, at \*13-14. This reading is supported by the statutory text, as set out above, and is bolstered by the statutes' titles. Whereas § 1226 covers "[a]pprehension and detention of aliens," the title of § 1225 "refers to the 'inspection' of 'inadmissible arriving' noncitizens [and] its subsections set forth procedures for 'examining immigration officer[s]' to engage in '[i]nspection[s]' of individuals 'arriving in the United States." *Id.* at \*13 (citing 8 U.S.C. § 1225(a)(3), § 1225(b)(1), § 1225(b)(2)(A), § 1225(b)(4), and § 1225(d)); *see Zumba*, 2025 WL 2753496, at \*8 ("the titles and headings of § 1225 repeatedly cabin its application to 'Inspections,' which . . . occur at ports of entry, their functional equivalent, or near the border").[6]

Cruz Gutierrez also directs the Court's attention to the Laken Riley Act (LRA), 8 U.S.C. § 1226(c)(1)(E), which Congress passed in early 2025. The LRA, which is codified

---

[6]     Although the BIA recently held to the contrary in *Hurtado*, agreeing with DHS' recent reinterpretation and deciding that § 1225(b)(2) applies to noncitizens already present in the country, the BIA's statutory interpretation is not binding on the courts. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) ("it is emphatically the province and duty of the judicial department to say what the law is") (cleaned up) (quoting *Marbury v. Madison*, 1 Cranch 137, 177 (1803)).

with the discretionary detention provisions of § 1226, mandates detention for "any alien

who . . . is inadmissible" under certain sections of 8 U.S.C. § 1182(a) and "is charged with,

is arrested for, is convicted of, admits having committed, or admits committing acts which

constitute the essential elements of" certain crimes.  8 U.S.C. § 1226(c)(1)(E).  The LRA

is instructive because, if § 1225(b)(2)'s mandatory detention provision applied as broadly

as the respondents urge, Congress would not have been required to amend § 1226(c)(1) to

except some inadmissible aliens from discretionary detention.    In other words, the

respondents' reading of the statute renders the recent LRA superfluous.  The Supreme

Court instructs that "one of the most basic interpretive canons" is "that a statute should be

construed so that effect is given to all its provisions, so that no part will be inoperative or

superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009)

(cleaned up); *see Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) (statutory

language "cannot be construed in a vacuum" because "[i]t is a fundamental canon of

statutory construction that the words of a statute must be read in their context and with a

view to their place in the overall statutory scheme") (cleaned up). The *Rodriguez* court ably

explained how the respondents' interpretation of the § 1225(b) conflicts with the canons of

statutory interpretation:

> Here, if . . . government's interpretation is correct and section 1225, rather
> than section 1226, is the applicable immigration detention authority for all
> applicants for admission, . . . then it would render superfluous provisions of
> section 1226(c). *See* § 1226(c)(1)(A), (D), (E) . . . Put another way, section
> 1226(c)(1)(E)'s mandatory detention for inadmissible noncitizens who are
> implicated in an enumerated crime, including those "present in the United
> States without being admitted or paroled," would be meaningless since all
> noncitizens "present in the United States who ha[ve] not been admitted"
> would already be subject to mandatory detention under the government's

11 / 17

reading. *See* § 1225(a)(1); § 1182(a)(6)(A)(i) . . . As the Supreme Court put
it in *Corley*, [516 U.S. at 314], the government's reading of section 1225(b)
thus seems clear only until one reads section 1226(c) and recognizes that if
section 1225(b) means what the government says, portions of section 1226(c)
serve no purpose.

*Rodriguez*, 2025 WL 2782499, at *18 (cleaned up); s*ee Padron*, 2025 WL 2950097, at *4.

Additionally, the LRA's recent amendment to § 1226 should be understood to

operate in harmony with the longstanding and accepted construction of § 1225 and § 1226.

"When Congress adopts a new law against the backdrop of a longstanding administrative

construction, this Court generally presumes the new provision should be understood to

work in harmony with what has come before." *Monsalvo Velazquez v. Bondi*, 604 U.S.

712, 725 (2025) (cleaned up); *see Loper Bright*, 603 U.S. at 386 ("the longstanding practice

of the government—like any other interpretive aid—can inform a court's determination of

what the law is") (cleaned up).  Here, both the courts and the executive agencies with

authority over immigration matters have long interpreted § 1226 to apply to noncitizens

who are already present in the United States.  *See, e.g*., *Jennings*, 583 U.S. at 289, 303;

*Buenrostro-Mendez*, 2025 WL 2886346, at *2.  When a court considers DHS' consistent,

longstanding administrative construction of § 1225 and § 1226, as *Monsalvo* and *Loper*

*Bright* instruct, this backdrop lends further support to the petitioner's argument that § 1226

applies to those who, like petitioner, have been present in the United States for many years.

*See Rodriguez*, 2025 WL 2782499, at *19 (citing *Monsalvo*); *Padron Covarrubias*, 2025

WL 2950097, at *4 (same).

The Court has conducted a careful analysis of the plain language of § 1225(b)(2)

and § 1226(a); the structure of the statute's mandatory detention provisions in § 1225(b)(2)

12 / 17

and discretionary detention provisions in § 1226(a); the LRA added by Congress this year;

the canons of statutory construction requiring a court to give effect to all of a statute's

phrases and provisions; the longstanding administrative and judicial interpretation of the

statutory provisions; and authorities cited by both parties.   Based on all of these

considerations, the Court determines that Cruz Gutierrez's detention falls under 8 U.S.C.

§ 1226(a).[7]

The respondents posit that many district judges who have ruled in favor of

petitioners on this same question of statutory construction "have not actually critically

looked into the issue, and instead have opted to defer to the majority" of district courts that

have addressed the issue, thus leading to deference among district courts that "snowballs"

inappropriately (Dkt. 16, at 2).   The respondents' suggestion that the district courts are

failing to engage in independent, critical analysis is, at least in this case, inaccurate.

---

[7]      Numerous district courts agree with this conclusion, as evidenced by the opinions cited above.  *See also Vazquez*, 2025 WL 2676082, at *11 & n. 7 (collecting cases).  The Court has considered authorities cited by the respondents.  *See Mejia Olalde v. Noem*, No. 1:25-CV-00168-JMD, 2025 WL 3131942, at *3-4 (E.D. Mo. Nov. 10, 2025) (determining that "applicant for admission" and "seeking admission" are synonymous, that surplusage "cannot trump the plain meaning of § 1225(b)(2)," and that the LRA is "merely overlapping" with § 1225(b)(2) because it provides additional requirements regarding "a timeline for when an alien is to be taken into custody");  *Barrios Sandoval v. Acuna*, No. 6:25-CV-01467, 2025 WL 3048926, at *5-6 (W.D. La. Oct. 31, 2025) (holding that § 1225 and § 1226 are not mutually exclusive); *Vargas Lopez v. Trump*, 2025 WL 2780351, at *8  (D. Neb. Sept. 30, 2025) (holding that the petitioner fits within the language of § 1225(b)(2), even if he also falls under § 1226(a)); Dkt. 15-1, at 9 (slip opinion in *Garibay-Robledo* recognizes multiple opinions holding that the Government's broad interpretation of § 1225(b)(2) renders § 1226 superfluous but concludes that "this argument, standing alone, is an insufficient basis to depart from the clear text of [§ 1225]," and noting that "sometimes the better overall reading of a statute contains some redundancy") (cleaned up) (citing, *inter alia*, *Barton v Barr*, 590 U.S. 222, 239 (2020)).  For the reasons stated in the analysis above, the Court respectfully disagrees with the statutory interpretation in these cases.

### B.     The Automatic Stay Provision

After an IJ ordered Cruz Gutierrez's release on bond, the respondents invoked the

automatic stay regulation in 8 C.F.R. § 1003.19(i)(2), which permits DHS to unilaterally

stay an IJ's bond order by filing a notice of appeal.

> Automatic stay in certain cases. In any case in which DHS has determined
> that an alien should not be released or has set a bond of $10,000 or more, *any*
> *order of the immigration judge authorizing release (on bond or otherwise)*
> *shall be stayed upon DHS's filing of a notice of intent to appeal the custody*
> *redetermination (Form EOIR–43)* with the immigration court within one
> business day of the order, and, except as otherwise provided in 8 CFR
> 1003.6(c), shall remain in abeyance pending decision of the appeal by the
> Board. *The decision whether or not to file Form EOIR–43 is subject to the*
> *discretion of the Secretary*.

8 C.F.R. § 1003.19(i)(2) (emphasis added).[8]  Cruz Gutierrez argues that the regulation and

his continued detention violate procedural and substantive due process protections, and that

DHS's regulation exceeds the authority delegated by Congress.

The Constitution guarantees due process of law to every person in the United States,

regardless of the person's immigration status. *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025);

*Zadvydas v. Davis,* 533 U.S. 678, 693 (2001).  When adjudicating a due process claim from

a civil detainee, courts apply the three-part test from *Mathews v. Eldridge*, considering (1)

the private interest that will be affected by the official action; (2) the risk of an erroneous

---

[8]     The automatic stay provision was added to the federal regulations governing immigration
custody and bonds after the terrorist attacks of September 11, 2001.  Whereas the regulation before
2001 had permitted automatic stays only when a noncitizen was subject to mandatory detention,
the current scheme places the decision in the Secretary's discretion.  *Gunaydin v. Trump*, 784 F.
Supp. 3d 1175, 1182-84 (D. Minn. 2025) (setting out detailed history of the provision); *Vazquez*,
2025 WL 2676082, at *5-*6 (same).

deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The respondents in this case make general arguments that the automatic stay provision in 8 C.F.R. § 1003.19(i)(2) does not violate due process because, for example, the stay lasts only until the BIA issues a decision and the regulation requires a certification by a senior legal official that sufficient legal and factual bases exist to justified continued detention (Dkt. 12, at 20-21 (citing various provisions of 8 C.F.R. § 1003.6(c)). However, the respondents' briefing does not address the *Mathews* factors (Dkt. 12; Dkt. 15).

Regarding the first *Mathews* factor, freedom from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Platas Arcos v. Noem*, No. 4:25-CV-04599, 2025 WL 2856558, at *2 (S.D. Tex. Oct. 8, 2025); *Sampiao v. Hyde*, 2025 WL 2607924, at *10 (D. Mass. Sept. 9, 2025). Cruz Gutierrez argues that his decades living in the United States, the fact that his children are United States citizens, his history of property ownership and employment, and his substantial ties to the community all support his strong liberty interest (Dkt. 14, at 7). The respondents make no argument in response. The first factor weighs in the petitioner's favor.

The second factor is the risk of an erroneous deprivation of the petitioner's liberty interest by the automatic stay provision. Cruz Gutierrez argues that the risk is high because, as numerous courts have noted, the provision applies only to those persons who *prevailed*

15 / 17

in a bond hearing before an IJ.  Moreover, the provision allows the Government, the losing

party at the bond hearing, to unilaterally decide to detain the person. *See Gunaydin*, 784 F.

Supp. 3d at 1187-88; *Platas Arcos*, 2025 WL 2856558, at *2; *Lopez-Arevelo v. Ripa*, No.

EP-25-CV-337-KC, 2025 WL 2691828, at *11 (W.D. Tex. Sept. 22, 2025); *Sampiao*, 2025

WL 607924, at *10; *Alvarez Martinez v. Noem*, No. 5:25-CV-01007-JKP, 2025 WL

2598379, at *3 (W.D. Tex. Sept. 8, 2025).[9]  The respondents have not joined issue on this

factor.  The Court concludes that this factor weighs in the petitioner's favor.

The third *Mathews* factor is the Government's interest in the regulation at issue. The

Government has a legitimate interest in preventing a detainee's flight and in protecting the

community.  *See Gunaydin*, 784 F. Supp. 3d at 1189; *Platas Arcos*, 2025 WL 2856558, at

3; *Sampiao*, 2025 WL 2607924, at *12. Here, however, Cruz Gutierrez argues that the

respondents have no valid interest in depriving him of his liberty without due process,

noting that an IJ already determined that he was not a danger to the public or a flight risk

(Dkt. 14, at 8-9).  The respondents have not addressed this factor and do not argue their

interest in the automatic stay provision.  The third factor therefore weighs in the petitioner's

favor.

The Court concludes, in accordance with numerous other courts considering the

question,[10] that the respondents' application of the automatic stay under 8 C.F.R.

---

[9]     As is relevant to the second factor of analysis, *Mathews*, 424 U.S. at 335, an alternate
procedure is available to the respondents under a regulation that allows DHS to obtain a
discretionary stay from the BIA.  8 C.F.R. § 1003.19(i)(1); *see Platas Arcos*, 2025 WL 2856558,
at *2 (citing cases).

[10]    *See Alvarez Martinez*, 2025 WL 2598379, at *4 n.1 (collecting cases).

§ 1003.19(i)(2) to Cruz Gutierrez violates his procedural due process rights. The petition for a writ of habeas corpus will be granted.  28 U.S.C. § 2241; 28 U.S.C. § 2243; *see Brown v. Davenport*, 596 U.S. 118, 128 (2022) ("federal courts may grant habeas relief as law and justice require") (cleaned up).

The Court does not address the petitioner's substantive due process claim or his claim that the regulation exceeds the authority delegated to DHS by Congress.[11]

## IV.    CONCLUSION

For the reasons stated above, the Court **ORDERS** as follows:

1.  The respondent's motion for summary judgment (Dkt. 12) is **DENIED.**

2.  The petition for a writ of habeas corpus filed by Juan Carlos Cruz Gutierrez is **GRANTED.**

3.  **Within 24 hours** of this order, the respondents must accept a bond payment made on the petitioner's behalf. The respondents then must release the petitioner immediately in accordance with the terms of the Immigration Judge's bond order.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on ____November 14_____, 2025.

_George C. Hanks Jr_

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE

---

[11]    Other district courts have held that the automatic stay provision violates detainees' substantive due process rights. *See Gunaydin*, 784 F. Supp. 3d at 1190 n.13 (collecting cases); *Vazquez*, 2025 WL 2676082, at *21.

17 / 17